UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| YOANIS GARCIA-RAMOS,<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br><br>Respondent. | CAUSE NO. 3:26-CV-1160-CCB-SJF |

OPINION AND ORDER

Immigration detainee Yoanis Garcia-Ramos, representing himself, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. ECF 1. In the initial round of briefing, the respondent represented that Garcia-Ramos would be removed to Cuba on August 20, 2026. ECF 10. But, on August 25, 2026, Garcia-Ramos replied that he had returned to the Miami Correctional Facility. ECF 14. The court ordered supplemental briefing to address this change of circumstances. ECF 15. The parties have filed supplemental briefs, so the petition is ready to be decided. ECF 16, ECF 17.

BACKGROUND

Garcia-Ramos is a Cuban citizen who entered the United States in 2011. EC 2 at 2. In 2015, he was convicted of fraud in Missouri. *Id.* at 2-3. On November 12, 2015, an immigration judge ordered him removed to Cuba. *Id.* On February 10, 2016, Immigration and Customs Enforcement (ICE) released him on an order of supervision.

ECF 10-1. On April 30, 2026, ICE detained him again. *Id.* According to the notice of revocation of release, the basis for revocation was that ICE had obtained a travel document and that his removal was to take place before July 29, 2026. *Id.*

On August 12, 2026, an ICE official attested that, on June 29, 2026, Cuba had approved Garcia-Ramos for repatriation and that he would be placed on a removal flight scheduled for August 20, 2026. ECF 10-2. On August 7, 2026, ICE transferred him to a staging facility in Louisiana. *Id.*

On August 25, 2026, Garcia-Ramos attested as follows:

> On the morning of August 20, 2026, Mr. Garcia-Ramos was pulled from the removal flight and placed on another flight bound for Ohio. A day later, he was back at the Miami Correctional Facility, where he remains. . . . On information and belief, the August 20 removal flight to Cuba departed as scheduled.

ECF 14 at 2-3. On September 2, 2026, the respondent acknowledged that the efforts to remove Garcia-Ramos to Cuba had failed. ECF 16. The respondent further represented that ICE intended to serve Garcia-Ramos with a notice of removal to Mexico. *Id.*

## SUBJECT MATTER JURISDICTION

The respondent first argues that the court lacks subject matter jurisdiction over Garcia-Ramos' habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure. *See Liang, v. English*, No. 3:25CV1052 DRL-SJF, 2026 WL 835853, at *1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.); *Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *1-*4 (N.D. Ind. Dec. 29, 2025) (Brisco, J.) (discussing § 1252(g)).

MERITS

Regarding the merits of the petition, the respondent first argues that Garcia-Ramos' detention is lawful under 8 U.S.C. § 1231 because the statute authorizes detention pending execution of a removal order. However, beyond the "removal period,"[1] which for Garcia-Ramos ended in February 2016, continued detention is authorized only for certain noncitizens delineated in § 1231(a)(6) and only as long as removal is reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). The Supreme Court has instructed that once removal is not reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute," though any release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

In *Zadvydas*, the Supreme Court adopted a "presumptively reasonable period of detention" of six months in recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. "After this 6–month period, once the alien

[1] The removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

"*Zadvydas* and the relevant regulations do not address whether the six-month presumptive reasonability period is cumulative across periods of detention or whether the period restarts upon each instance of detention." *Singhavara v. Noem*, 2025 WL 3140712, at *3 (N.D. Ill. Nov. 10, 2025). However, "[m]ost courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated by a concern that the federal government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them." *Abuelhawa v. Noem*, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (collecting cases) (quoted with approval in *Singhavara*, 2025 WL 3140712, at *3).

The court agrees with the reasoning and conclusions of the federal courts that have found the six-month period to apply cumulatively across initial and subsequent periods of detention. Applying a six-month period of presumptive reasonableness to every subsequent period of detention would go against the concerns in *Zadvydas*, which noted the broad language in § 1231(a) seemingly authorizes detention in violation of the noncitizen's due process rights. *Zadvydas*, 533 U.S. at 690. Just as "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem," *id.*, so, too, would a statute authorizing wholly discretionary re-detention of a noncitizen. *Zadvydas* declares that detention of a noncitizen past the "removal period" is not authorized by § 1231(a) if it is unrelated to the statutory goals of "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the

community." *Id.* Allowing the government a six-month period of unreviewable detention every time it re-detains a noncitizen does not advance those statutory goals.

Because Garcia-Ramos' cumulative term of detention exceeds six months, the court turns to whether his removal is reasonably foreseeable. The Warden acknowledges that the efforts to remove Garcia-Ramos to Cuba have failed, so Garcia-Ramos' removal to Cuba is no longer reasonably foreseeable. However, the Warden has since represented that the government intends to remove Garcia-Ramos to Mexico. Garcia-Ramos responds that the respondent has not demonstrated the existence of a specific removal arrangement with Mexico, but it is Garcia-Ramos who has the initial burden to show that his removal to Mexico is not reasonably foreseeable.

Garcia-Ramos provides no reason that he cannot be specifically removed to Mexico within the near future. Instead, he points to the government's failure to remove him to date and suggests allowing the government to pursue additional removal efforts to third countries could result in his indefinite detention. To his point, there is no shortage of third country candidates, so Garcia-Ramos' concern might have persuasive force under some circumstances. But the specific circumstances here do not yet meaningfully suggest that removal to a third country will not occur within the reasonably foreseeable future. The government pivoted to third country removal less than one month ago, and there is no indication that any third country candidate has yet refused to accept Garcia-Ramos for removal. Because Garcia-Ramos has not provided good reason to believe that this removal to Mexico will not occur within the reasonably foreseeable future, the court cannot grant habeas relief on this claim.

Next, Garcia-Ramos argues that he is entitled to habeas relief because the government did not properly revoke his supervised release under 8 C.F.R. § 241.13(i)(2), reasoning that the failed removal effort to Cuba demonstrates that the government made materially false statements in the notice of revocation. 8 C.F.R. § 241.13(i) authorizes the government to revoke supervised release from immigration detainees for violating conditions of release or "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

It is readily apparent that the notice of revocation was false in the sense that Garcia-Ramos was not removed to Cuba by July 2026, and it is also true that the respondent provides no explanation as to why the government pulled him from the removal flight to Cuba on August 20, 2026. Nevertheless, the circumstances are not so extreme as to suggest bad faith or even that the government's representations were not substantially true at the time of revocation. Significantly, "Cuba has historically refused to accept back its removable nationals." *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats*, Pres. Proc. No. 10949, 90 FR 24497, 2025 WL 1626552 (June 2, 2025). Further, while efforts to remove Garcia-Ramos to Cuba failed, Garcia-Ramos concedes that the government successfully removed one hundred individuals to Cuba on the very flight upon which he was temporarily seated. Therefore, the record demonstrates that a substantial change in circumstances regarding Cuba's willingness to accept individuals for removal occurred. And the government's actions here – going so far as

to seat Garcia-Ramos on the removal flight before taking him off of it – were consistent with reasonable efforts to execute his removal pursuant to this change of circumstances.

At most, Garcia-Ramos has demonstrated, with the benefit of hindsight, that the government had incorrectly represented that he would be removed to Cuba by July 2026 (and later by August 2026). But 8 C.F.R. § 241.13(i) does not require the government to have an impervious removal plan in place at the time of revocation; it merely requires a change of circumstances that renders his removal significantly likely to occur within the reasonably foreseeable future. On this record, the court finds that the government satisfied 8 C.F.R. § 241.13(i) when it revoked Garcia-Ramos' release on April 30, 2026. The fact that the plan to remove Garcia-Ramos to Cuba proved unsuccessful may be relevant (though not dispositive) to the issue of whether his continued detention remains lawful, but Garcia-Ramos cannot invalidate the reasons for his revocation merely by showing that the government's initial attempt to remove him failed. Consequently, the court cannot grant habeas relief on this claim. Because no claims remain, the court will deny the habeas petition.

As a final matter, the court observes that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). While Garcia-Ramos may not be entitled to habeas relief now, it does not prevent him from seeking habeas relief at some later date if the government continues to detain him for a significant period of time.

For these reasons, the court **DENIES** the habeas petition (ECF 2) and **DIRECTS** the clerk to close this case.

SO ORDERED on September 15, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT